UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CACHIL DEHE BAND OF WINTUN INDIANS OF THE COLUSA INDIAN COMMUNITY, a federally recognized Indian Tribe,

    Plaintiff,

  v.

STATE OF CALIFORNIA; CALIFORNIA GAMBLING CONTROL COMMISSION, an agency of the State of California; and ARNOLD SCHWARZENEGGER, Governor of the State of California,

    Defendants.

_____/

NO. CIV. S-04-2265 FCD KJM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendants' motion for judgment on the pleadings.[1] Plaintiff opposes defendants'

---

[1] Plaintiff also moves for a modification of the Pretrial Scheduling Order ("PSO") for the court to hear its motion for summary judgment on its first four claims for relief. However, for the reasons set forth herein, plaintiff's motion to modify the PSO is DENIED as moot.

motion. For the reason's set forth below, defendants' motion is GRANTED.

**BACKGROUND**

Plaintiff, Cachil Dehe Band of Wintun Indians of the Colusa Indian Community (the "Tribe"), is an American Indian Tribe with a governing body duly recognized by the Secretary of the Interior. (Pl.s' Compl., filed Oct. 25, 2004, ¶ 2). The Tribe entered into a Class III Gaming Compact (the "Compact") with the State of California (the "State") in 1999. (Id. ¶ 24). At the same time, 56 other tribes (the "Compact Tribes") also executed virtually identical compacts with the State. (Id.; see Artichoke Joe's California Grand Casino v. Norton, 353 F.3d 712, 717-18 (9th Cir. 2003); Artichoke Joe's California Grand Casino, 216 F. Supp. 2d 1084, 1094 (E.D. Cal. 2002)).

The Compact sets forth various provisions relating to the operation of Class III Gaming Devices. The Compact sets the limit of the amount of Gaming Devices operated by each individual tribe at 2,000. (Compl. ¶ 14; Tribal-State Compact between the State of California and the Colusa Indian Community ("Compact"), attached as Ex. 1 to Defs.' Request for Judicial Notice, § 4.3.2.2).[2] The Compact also sets a statewide maximum on the

---

Plaintiff also submitted three declarations in support of its opposition to defendants' Rule 12(c) motion. Because this matter is before the court on a motion for judgment on the pleadings, consideration of material outside the pleadings, except for those properly considered pursuant to judicial notice, is not appropriate. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1549, 1550 (9th Cir. 1990). The court will not consider this motion as a motion for summary judgment.

[2] The court takes judicial notice of the Compact. Fed. R. Civ. Proc. 201; Cal. Gov't Code § 12012.25 (ratifying the 1999 Compacts).

number of Gaming Devices that all Compact Tribes may license in the aggregate.[3]  (Id.)  Gaming Device licenses are distributed among all the 1999 Compact Tribes pursuant to the license draw process provided by the Compact.  (Compact § 4.3.2.2).  Tribes are awarded licenses based upon the tribe's placement in one of five priority tiers.  (Id.)  Placement in a particular tier is based upon the number of Gaming Devices operated by the tribe.  (Id.)  On or about March 31, 2001, then-Governor Gray Davis issued Executive Order D-31-01 in which he declared that the California Gambling Control Commission ("CGCC") shall control gaming device licensing.  (Compl. ¶ 18). Prior to that date, a tribal draw administrator conducted gaming device license draws.  (Id. ¶ 16).  In June 2002, the CGCC declared that the licenses issued in those draws were invalid and that they would be replaced by licenses issued by the CGCC.  (Id. ¶ 21).

　　The Compact also provides for revenue sharing with non-gaming tribes.  The Compact sets forth that a tribe may acquire and maintain additional Gaming Device licenses by paying annual fees in accordance with a fee schedule and by paying, for each Gaming Device license, "a non-refundable one-time pre-payment fee" in the amount of $1,250 for each Gaming Device being licensed.  (Id. ¶ 14).  The monies are to be received, deposited, and distributed from the Revenue Sharing Trust Fund ("RSTF"), a fund created by the Legislature and administered by the CGCC as trustee.  (Compact § 4.3.2).  For purposes of revenue sharing, the Compact defines a Compact Tribe as a tribe having a compact

---

[3]　　The statewide cap is calculated pursuant to a formula provided in § 4.3.2.2 of the Compact.

1  with the State authorizing Class III Gaming; Non-Compact Tribes
2  are defined as federally-recognized tribes that are operating
3  fewer than 350 Gaming Devices, whether or not such a tribe has a
4  Compact with the State.  (Compl. ¶ 10; Compact § 4.3.2(a)(1)).
5  The revenue sharing provisions of the Compact provide that Non-
6  Compact Tribes shall receive $1.1 million per year, unless there
7  are insufficient funds, in which case, the available monies in
8  the RSTF shall be distributed in equal shares to the Non-Compact
9  Tribes (the "RSTF-eligible Tribes").  (Compact § 4.3.2.1).  The
10 CGCC interpreted that the non-refundable, one-time pre-payment
11 fee could be used as a credit toward annual license fees and that
12 no annual fees would be required for the first 350 licenses
13 issued to a tribe.  (Compl. ¶ 21).

14      Section 9 of the Compact also establishes a procedure to be
15 followed in the event of a dispute relating to the Compact.  The
16 parties are to meet and confer in good faith not later than 10
17 days after one party gives the other party notice of the
18 existence of a dispute.  (Id. ¶ 33).  If the dispute is not
19 resolved within 30 days after the first meeting, either party may
20 seek to have the dispute resolved by an arbitrator or a federal
21 district court, or if the district court declines jurisdiction,
22 any State court of competent jurisdiction.  (Id.)

23      In 2002, the CGCC notified plaintiff and other Compact
24 Tribes that the CGCC would conduct a round of Gaming Device
25 license draws in September 2002.  (Id. ¶ 22).  Prior to the draw,
26 and as of September 1, 1999, the Tribe was operating 523 Gaming
27 Devices.  (Id. ¶ 28).  The Tribe notified the CGCC of its intent
28 to draw 250 licenses and tendered a check in the amount of

4

$312,500 as the non-refundable one-time pre-payment fee. (Id. ¶ 22). The Tribe was placed in the third priority tier and received 250 licenses. (Id. ¶ 28). In November 2003, the CGCC notified the Tribe that another round of draws, in which 750 licenses would be available to be drawn, would be conducted on December 19, 2003. (Id. ¶ 27). Plaintiff requested 377 licenses and submitted a pre-payment of $471,250. (Id. ¶ 32). The Tribe was assigned to the fourth priority tier and received no licenses. (Id. ¶¶ 31-32). The CGCC refunded the pre-payment of $471,250 in full. (Id. ¶ 32). On October 21, 2004, the CGCC conducted another draw, in which the Tribe, placed in the fourth priority tier, pre-paid fees for 341 licenses and received only 73. (Id. ¶ 31). The Tribe anticipates receiving a refund of the pre-payment on the licenses that it did not receive in the draw. (Id. ¶ 32).

On December 30, 2003, the Tribe wrote to Governor Schwarzenegger to request that the State meet and confer with the Tribe about (1) the assignment of the Tribe to the fourth priority tier in the December 19, 2003 round of draws; (2) the CGCC's determination of the number of licenses available for issuance; (3) the CGCC's role and authority in the draw process; and (4) the CGCC's retention of the $312,500 tendered by the Tribe in connection with its draw of 250 Gaming Device licenses in September 2002. (Id. ¶ 34). A meeting took place on February 3, 2004. (Id. ¶ 35). No agreement was reached on any of the issues the Tribe raised. (Id. ¶ 36). By letter dated February 23, 2004, the State formally rejected each of the Tribe's positions. (Id.)

5

On October 25, 2004, plaintiff filed a complaint in this court, alleging violations of the Compact. Plaintiff asserts that defendants violated the Compact by: (1) excluding the Tribe from participating in the third priority tier in the December 19, 2003 round of draws; (2) unilaterally determining the number of Gaming Device licenses authorized by § 4.3.2.2(a)(1) of the Compact; (3) failing to refund money paid pursuant to the non-refundable one-time pre-payment fee set forth in § 4.3.2.2(e) of the Compact; (4) CGCC conducting rounds of draws of Gaming Device licenses without authority; and (5) failing to negotiate in good faith.[4] On March 28, 2006, defendants filed this motion for judgment on the pleadings, seeking to dismiss plaintiff's first second, third, and fourth claims for relief for failure to join necessary and indispensable parties and plaintiff's fifth claim for relief for failure to exhaust non-judicial remedies.

**STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure provides in relevant part:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.

In considering a motion for judgment on the pleadings, the standard applied by the court is virtually identical to the standard for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). Fajardo v. City of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999).

---

[4] Plaintiff also asserts that the State is violating its obligations under the Indian Gaming Regulatory Act of 1988 ("IGRA") by failing to negotiate in good faith. (Compl. ¶ 58).

6

1  A claim will not be dismissed "unless it appears beyond
2 doubt that plaintiff can prove no set of facts in support of his
3 [or her] claim that would entitle him [or her] to relief."
4 Yamaguchi v. Dep't of the Air Force, 109 F.3d 1475, 1480 (9th
5 Cir. 1997)(quoting Lewis v. Tel. Employees Credit Union, 87 F.3d
6 1537, 1545 (9th Cir. 1996)). "All allegations of material fact
7 are taken as true and construed in the light most favorable to
8 the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d
9 336, 337-38 (9th Cir. 1996).

10  Given that the complaint is construed favorably to the
11 pleader, the court may not dismiss the claim unless it appears
12 beyond a doubt that the plaintiff can prove no set of facts in
13 support of the claim which would entitle him or her to relief.
14 Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Indus., Inc. v.
15 Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

16  Nevertheless, it is inappropriate to assume that plaintiff
17 "can prove facts which it has not alleged or that the defendants
18 have violated the . . . laws in ways that have not been alleged."
19 Associated Gen. Contractors of Cal., Inc. v. California State
20 Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the
21 court "need not assume the truth of legal conclusions cast in the
22 form of factual allegations." United States ex rel. Chunie v.
23 Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

24  In ruling upon a motion for judgment on the pleadings, the
25 court may consider only the complaint, any exhibits thereto, the
26 responsive pleading, and matters which may be judicially noticed
27 pursuant to Federal Rule of Evidence 201. See Mir v. Little Co.
28 Of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors

7

Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**I.   Rule 19 Joinder**

Defendants assert that plaintiff's first four claims should be dismissed for failure to join necessary and indispensable parties. Rule 19(a) provides for joinder of necessary and indispensable parties. To determine if a party is necessary and indispensable to a suit, the court must (1) determine whether the absent party is a "necessary" party, and (2) if the absent party is necessary, but joinder is not feasible, whether the party is "indispensable." Kescoli v. Babbit, 101 F.3d 1304, 1309 (9th Cir. 1996). The moving party bears the burden of persuasion. See Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990).

**A.   Necessary Party**

To determine whether a party is necessary to an action, the court must undertake another two-part analysis. Makah, 910 F.2d at 558. Rule 19(a)(1) provides that a person is a necessary party where "in the person's absence complete relief cannot be accorded among those already parties. Fed. R. Civ. Proc. 19(a). Rule 19(a)(2) provides that a person is also a necessary party where

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring, double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

8

Id. The interest referenced in Rule 19(a)(2) must be a legally protectable interest in the suit, more than a financial stake and more than speculation about a future event. Makah, 910 F.2d at 558. However, a fixed fund or a finite amount of resources which a court is asked to allocate may create a protectable interest in beneficiaries of the fund. Id. (citing Wichita & Affiliated Tribes of Oklahoma v. Hodel, 788 F.2d 765, 774 (D.C. Cir. 1986). Interests arising from terms in bargained contracts are also legally protectable. Am. Greyhound Racing, Inc. v. Hull, 305 F.3d 1015, 1023 (9th Cir. 2002).

Defendants argue that all 1999 Compact Tribes and RSTF-eligible Tribes, which have not been joined, are necessary parties to the current suit. Defendants assert that these tribes have a legally protectable interest in the litigation that will be practically impaired by a favorable judgment to plaintiff and that the disposition of this matter would subject the State to inconsistent obligations.

At issue in plaintiff's first and second claims for relief is the validity of the State and CGCC's interpretation of the clauses set forth in § 4.3.2.2 of the Compact, addressing participation in Gaming Device license draws and the authorized number of Gaming Device licenses. As relief for its first and second claims, plaintiff asks the court to grant various forms of declaratory relief and to order the CGCC to issue 377 Gaming Device licences to the Tribe.[5] (Compl., Prayer for Relief at 17-

---

[5] Specifically, plaintiff asks the court to declare that CGCC has a ministerial duty immediately to issue 377 licenses and to enjoin the State from declining immediately to issue 377 licenses.

9

18). There is a statewide limit on the number of gaming licenses that all Compact Tribes in the aggregate may receive. (Compl. ¶ 14). As such, plaintiff requests the court allocate licenses from a finite number of available licenses. An order to issue any additional licenses to plaintiff would necessarily and practically impair the rights of the other Compact Tribes who would be deprived of those licenses or the opportunity to obtain those licenses. Accordingly, all Compact Tribes are necessary parties to plaintiff's first and second claims for relief. See Makah, 910 F.2d at 558-59.

Plaintiff's third claim for relief involves the Tribe's one-time pre-payment of $1,250 for each Gaming Device license that the Tribe draws. Because the CGCC determined that this one-time pre-payment is to be credited against the annual license fees due on Gaming Device licenses, and because the Tribe does not owe any annual license fees, plaintiff seeks a refund of the $403,750 it has paid. The funds collected through the one-time pre-payment is deposited in the RSTF. (Compl. ¶ 16). The Compact provides that each Non-Compact Tribe shall receive distribution from the RSTF, either in the amount of $1.1 million per year, or if there are insufficient monies for this sum, any available monies in the RSTF shall be distributed to Non-Compact Tribes in *equal shares*. (Compact § 4.3.2.1(a)). Any excess monies left in the fund after distribution remain in the RSTF for disbursement in future years. Id. Therefore, an award of a refund to plaintiff will practically impair the rights of Non-Compact, RSTF-eligible Tribes because the return of any RSTF monies will lessen the amount of money in the fund for reimbursement to those other

10

tribes. In other words, to the extent that there is insufficient money to pay each non-Compact Tribe $1.1 million, an award to plaintiff will lessen the amount of money distributed to each other tribe. To the extent that there is sufficient money to pay each Non-Compact tribe $1.1 million, an award to plaintiff decreases the funds available for disbursement the following year. Therefore, the interests of the Non-Compact, RSTF-eligible Tribes will be practically impaired by the relief sought by plaintiff. As such, the Non-Compact, RSTF-eligible Tribes are necessary parties to plaintiff's third claim for relief.

Plaintiff's fourth claim for relief alleges that CGCC lacks authority to conduct rounds of draws for Gaming Device licenses. If the court were to grant plaintiff's requested relief and declare that CGCC lacked authority to administer the Gaming Device licence draws, the CGCC would be unable to conduct further draws and all previously issued licenses would be invalidated. As a result, other Compact Tribes would not be able to draw any available licenses in the future. Further, the licenses distributed to other Compact Tribes in previous draws would be meaningless. Thus, the interests of other Compact Tribes would be practically impaired by the relief sought by plaintiff. See Am. Greyhound, 305 F.3d at 1024 (holding that all tribes were necessary parties to declaratory judgment that gaming operations were unlawful because the judicial determination would affect the tribes' interest as a practical matter). Accordingly, all Compact Tribes are necessary parties to plaintiff's first and second claims for relief.

/////

1  Further, the relief sought by plaintiff, if granted, would
2 leave defendants subject to a substantial risk of inconsistent
3 obligations.  While plaintiff asserts that the Compact between
4 the Tribe and defendants is a bilateral contract, it is, in
5 reality, one of many virtually identical Compacts.  See Artichoke
6 Joe's, 353 F.3d at 717.  To the extent that plaintiff asserts
7 that it seeks the court to rule only on the interpretation of its
8 "bilateral agreement" with defendants, any interpretation could
9 result in defendants requirement to perform in one manner under
10 plaintiff's contract and in a directly incongruous manner under
11 the other virtually identical contracts.  For example, if
12 plaintiff prevailed on its fourth claim of relief, CGCC would not
13 have authority to administer Gaming Device license draws under
14 its contract, but would have authority to administer Gaming
15 Device license draws under the other Compacts.  Accordingly, all
16 1999 Compact Tribes are necessary parties to plaintiff's first
17 four claims for relief.

**B.   Indispensable Party**

19  Rule 19(b) sets forth the standard to apply when joinder of
20 necessary parties is not feasible.  In this case, joinder of the
21 1999 Compact Tribes and RSTF-eligible Tribes is not feasible
22 because each of these tribes is immune from suit under the common
23 law doctrine of tribal sovereign immunity.  Kiowa Tribe of
24 Oklahoma v. Mfg. Technologies, Inc., 523 U.S. 751, 754 (1998)
25 ("As a matter of federal law, an Indian tribe is subject to suit
26 only where Congress has authorized the suit or the tribe has
27 waived its immunity.").
28 /////

Rule 19(b) provides that if a necessary party cannot be joined, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed. R. Civ. Proc. 19(b). In making this determination, the court undertakes a four-part analysis, looking at (1) the prejudice to any party resulting from a judgment; (2) whether the court can shape relief to lessen prejudice to absent parties; (3) if an adequate remedy, even if not complete, can be awarded without the absent party; and (4) whether an alternative forum is available to the plaintiff. Id.; Makah, 910 F.2d at 560.

Defendants assert that the absent tribes will be prejudiced by plaintiff's requested relief. "Not surprisingly, the first factor of prejudice, insofar as it focuses on the absent party, largely duplicates the consideration that made a party necessary under Rule 19(a)." Am. Greyhound, 305 F.3d at 1024-25 (citations omitted). To the extent that plaintiff seeks the award of additional gaming device licenses, that award would come at the expense of the absent tribes because of the finite nature of the gaming devices that all tribes may license. To the extent that plaintiff seeks a refund of its pre-payment, the relief would prejudice the RSTF-eligible Tribes because it would lessen the amount of money in the fund to be distributed on an equal basis. Finally, to the extent plaintiff asks the court to declare that CGCC does not have authority to conduct the gaming license draws, the relief would prejudice those Compact Tribes who would seek licenses in a future draw as well as Compact Tribes who were

13

previously awarded licenses in the draw system.  Plaintiff cannot adequately represent the absent tribes because of the potential intertribal conflicts over the rights to the limited number of gaming devices and licenses.  See Makah, 910 F.2d at 560.  Thus, the relief sought by plaintiff would prejudice the absent tribes.

Defendants argue that the prejudice cannot be lessened or avoided through shaping the relief.  Plaintiff argues that the court lessen or avoid the prejudice through ordering the issuance of an additional 24,800 licenses, such that the absent tribes would also receive all licenses previously requested in the draw process.  This does not take into account the interests of Compact Tribes that may be opposed to the state's award of more gaming device licenses, specifically those in close geographical proximity to plaintiff, whose market share of class III gaming would be affected by the inundation of licenses.  Therefore, because any relief would be detrimental to either plaintiff or the absent tribes, the court has no way to shape the relief to lessen or avoid prejudice.  See Makah, 910 F.2d at 560.  Similarly, the only "adequate" remedy would be at the cost of the absent parties.  See id.

Finally, defendants argue that plaintiff would have an alternative forum in which to seek relief.  Defendants assert that the Compact provides that the terms and conditions of the contract may be amended by the mutual and written agreement of the parties, (Compact § 12.1), and that plaintiff is free to request re-negotiation of its 1999 Compact with the State. However, plaintiff is left without a judicial forum in which to bring suit against defendants.  The Ninth Circuit has held that

14

this factor is not one to be dispensed with lightly. <u>Manybeads v. United States</u>, 209 F.3d 1164, 1166 (9th Cir. 2000). However, the Ninth Circuit has also recognized the importance of tribal sovereign immunity, which may leave a party with no forum for its claim. <u>See</u> <u>Wilbur v. Locke</u>, 423 F.3d 1101, 1115 (9th Cir. 2005) (finding the absent Indian tribe indispensable despite the lack of an alternative forum); <u>Manybeads</u>, 209 F.3d at 1166 (same); <u>Makah</u>, 910 F. 2dd at 560 (same). Therefore, a balance of the four factor analysis supports the determination that the Compact Tribes and the RSTF-eligible Tribes are indispensable parties pursuant to Rule 19(b).

**C.    Public Rights Exception**

Plaintiff contends that this case falls within the "public rights" exception to joinder rules.[6] "Under this exception, even if the [t]ribes are necessary parties, they are not deemed indispensable and, consequently, dismissal is not warranted." <u>Kescoli v. Babbitt</u>, 101 F.3d 1304, 1311 (9th Cir. 1996); <u>Makah</u>, 910 F.2d at 559 n.6. Generally, to qualify for the public rights exception, "the litigation must transcend the private interests of the litigants and seek to vindicate a public right." <u>Id.</u> (citing <u>Kickapoo Tribe of Indians v. Babbitt</u>, 43 F.3d 11491, 1500 (D.C. Cir. 1995). However, "although the litigation may adversely affect the absent parties' interests, the litigation must not 'destroy the legal entitlements of the absent parties.'"

---

[6] Plaintiff's argument that the public rights exception applies is somewhat disingenuous given that the majority of its opposition argues that all 1999 Compact Tribes or RSTF-eligible Tribes are not necessary parties to this action because plaintiff seeks to enforce its own rights under a bilateral contract.

15

Id. (quoting Connor v. Burford, 848 F.2d 1441, 1459 (9th Cir. 1988).

In its first and second claims for relief, plaintiff seeks the reallocation of Gaming Device licenses such that the Tribe will be awarded 377 additional licenses.[7] In its first claim, plaintiff seeks a determination that it should have been placed in the third priority tier instead of the fourth priority tier. This claim is a private one, focused on the merits of plaintiff's dispute regarding its placement in a specific priority tier. In its second claim, plaintiff seeks a determination that the statewide cap determined by the State is void. This claim is also a private one, seeking the court to determine that a larger total of Gaming Device licences is allowed, such that plaintiff may be awarded the licenses it seeks. Finally, plaintiff's third claim of relief seeks a refund of moneys paid into the RSTF. This claims seeks adjudication of plaintiff's right to specific monetary relief, not a determination of a public right. Therefore, plaintiff's first, second, and third claims for relief do not seek to vindicate a public right, but rather to advance plaintiff's private interests in receiving more Gaming Devices and a refund of its pre-payment for licenses previously received.

Plaintiff's fourth claim of relief alleges that the CGCC is not authorized to administer the Gaming Device license draws. This claim may seek to vindicate a public right in ensuring that

---

[7] Although plaintiff relies heavily on Makah, in Makah the Ninth Circuit found that the reallocation of finite resources, in that case quotas on fishing rights, did not qualify for the public rights exception.

16

a lawful procedure is followed in the future.[8]  As such, the claim may be closer akin to the vindication of a public right approved of in Makah, ensuring an agency's future compliance with statutory procedures, than plaintiff's other challenged claims. Makah, 910 F.2d at 559.  However, if plaintiff prevailed, the relief would deprive absent parties of their legal entitlements to the licenses awarded pursuant to an invalid process.  See Kescoli, 101 F.3d at 1312.  Because the process by which the licenses were procured was invalid, the licenses could be rendered meaningless.

In view of the *essentially* private nature of the present litigation and the significant threat to the Compact Tribes' interests, the application of the public rights exception is not appropriate in this case.  See id.  Defendants' motion for judgment on the pleadings regarding plaintiff's first, second, third, and fourth claims for relief is GRANTED for failure to join necessary and indispensable parties.

**II. Failure to Exhaust Non-Judicial Remedies**

Defendants contend that the Tribe's fifth claim for relief is jurisdictionally deficient because the Tribe has not satisfied two preconditions to its right to sue the State.  First, defendants assert that the Tribe has not exhausted the meet and confer provision set forth in § 9.1 of the Compact.  Second, defendants contend that the Tribe has not given the State notice

---

[8] However, the court remains skeptical, given the tenor of plaintiff's first three claims for relief, whether plaintiff's challenge to CGCC's authority is merely a pretext for vindicating its private grievance that it was not awarded the requested licenses through CGCC's draw process.

17

and opportunity to cure any alleged breach as required by § 11.2.1 of the Compact.

Plaintiff's fifth claim for relief alleges that defendant failed to negotiate in good faith after the state requested renegotiation of §§ 4.3.1-4.3.2 of the Compact. (Compl. ¶ 60). Section 9.1 of the Compact provides that "the parties establishe[d] a threshold requirement that disputes between the Tribe and the State first be subjected to a process of meeting and conferring in good faith." (Compact § 9.1). Plaintiff's complaint does not allege that the Tribe met and conferred with the State in regards to its claim of failure to negotiate in good faith. In its opposition, plaintiff admits that it did not meet and confer, but argues that it did not exhaust the § 9.1 dispute resolution process because exhaustion would be futile. However, plaintiff did not allege in its complaint that the dispute resolution process would be futile, nor did it allege facts that would support this argument.[9] Further, plaintiff asserts that the Tribe has requested that the State meet and confer and that a meeting was set for April 27, 2006.

Because plaintiff failed to exhaust the meet and confer requirement set forth in § 9.1 of the Compact prior to filing suit in this court and because plaintiff has not sufficiently alleged that such exhaustion is futile, defendant's motion for judgement on the pleadings regarding plaintiff's fifth claim for relief is GRANTED.

---

[9] Plaintiff presented some related facts through a declaration submitted with plaintiff's opposition. As stated previously, the court will not consider documents outside of the pleadings, except those judicially noticed, on defendants' Rule 12(c) motion.

18

In its opposition, plaintiff requests that the court allow plaintiff to supplement its Complaint to allege exhaustion of the meet and confer process under § 9.1 of the Compact.  However, plaintiff has not filed a motion to amend the Pretrial Scheduling Order pursuant to Rule 16,[10] nor has plaintiff filed a motion to amend or supplement the pleadings pursuant to Rule 15.  Further, plaintiff has presented no evidence that the meet and confer process has been exhausted.  Rather, defendants assert that the meet and confer process will not be exhausted until May 27, 2006.  As such, the court does not give plaintiff leave to amend or supplement its complaint.

**CONCLUSION**

For the reasons stated above, defendants' motion for judgment on the pleadings is GRANTED.  Plaintiff's first, second, third, and fourth claims for relief are dismissed for failure to join necessary and indispensable parties.  Plaintiff's fifth claim for relief is dismissed for failure to exhaust non-judicial remedies.  The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: May 16, 2006.

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, JR.
United States District Judge

---

[10] The Pretrial Scheduling Order, filed May 20, 2005, provides that "No further . . . amendments to pleadings is permitted without leave of court, good cause having been shown."